# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

SCHWARZ PARTNERS PACKAGING,
LLC, *doing business as Maxpak*,

    Plaintiff,

    v.

NATIONAL LABOR RELATIONS BOARD,
*et al.*,

    Defendants.

</td><td>

Civil Action No. 13-343 (BAH)

Judge Beryl A. Howell

</td></tr>
</table>

## MEMORANDUM OPINION

This action for declaratory and injunctive relief arises out of a union election conducted at the plaintiff, Schwarz Partners Packaging, LLC's, manufacturing facility in Lakeland, Florida. Compl. ¶ 2, ECF No. 1. The plaintiff challenges the actions of the defendant, the National Labor Relations Board ("NLRB"),[1] in "sustaining certain objections to [the union] election" and "directing a ballot count and second election" at the plaintiff's plant on grounds that "the Board lacked a quorum and had no authority to act." *Id.* ¶ 1. Pending before the Court are two motions: the plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 12, and the defendants' Motion to Transfer or, in the alternative, Motion to Dismiss ("Defs.' Mot.") for lack of subject matter jurisdiction, ECF No. 13. For the reasons stated below, the defendants' motion to dismiss is granted. The plaintiff's motion for summary judgment and the defendants' motion to transfer are denied as moot.

---

[1] The NLRB's Acting General Counsel is also named as a defendant for the purposes of injunctive relief only, *see* Compl. ¶ 6, and not because he is alleged to have been involved in any of the conduct at issue, *see id.*, *generally* (seeking injunction against Defendant Acting General Counsel to prevent the filing of unfair labor practice charge against plaintiff). The plaintiff is not challenging the Acting General Counsel's appointment or the potential validity of his actions. *See id.*, *generally*; *see also* Defs.' Mem. Supp. Mot. Transfer or Mot. Dismiss ("Defs.' Mem.") at 6 n.3, ECF No. 13. Unless otherwise mentioned, reference to actions of "the defendants" in this memorandum opinion refers to the actions of defendant NLRB.

## I. BACKGROUND

The plaintiff manufactures packaging material at its Lakeland facility under the business name Maxpak and "is an employer within the meaning of section 2(2) of the National Labor Relations Act ("NLRA")." Compl. ¶ 4; *see also* Decl. of Joseph A. Kennedy, Director of Human Resources, Schwarz Partners Packaging, LP ("Kennedy Decl.") ¶ 1, ECF No. 12-1.[2] On March 15, 2012, the NLRB held an election (the "first election") at the plaintiff's Lakeland facility to determine whether the United Steelworkers International Union (the "Union") would represent certain employees. Compl. ¶ 12. More than ninety-six percent of the plaintiff's Lakeland workforce voted in the election. *See* Decl. of David Cohen, NLRB Regional Atty., Region 12 ("Cohen Decl.") Ex. D at 63, ECF No. 13-1. Following the election, the Union challenged the validity of two ballots on the grounds that ineligible employees cast them. Compl. ¶ 12. Since the vote was very close, with thirty-nine votes in favor of the Union and thirty-eight votes opposed, these challenged ballots were potentially determinative. *Id.*

The objections posed by the Union and the plaintiff to the conduct of the election, including the ballot challenges, were presented to an NLRB hearing officer whose findings were eventually reviewed by a three-member panel of the NLRB, consisting of Chairman Mark Pearce, Member Richard Griffin and Member Sharon Block. *Id.* ¶ 13; *see* Compl. Ex. 1 (NLRB Decision and Direction in *Schwarz Partners Packaging, LLC, D/B/A/ Maxpak v. United Steelworkers International Union*, Case No. 12-RC-073852 (N.L.R.B. Aug. 29, 2012)) ("NLRB Decision") at 1–2, ECF No. 1-1. The plaintiff argued to the panel that Members Griffin and Block were not valid members of the NLRB because their "purported recess" appointments were "unconstitutional and void and that the Board therefore lacked a quorum to act." Compl. ¶ 13.

---

[2] The facts discussed are taken from the Complaint, the plaintiff's declaration in support of its Motion for Summary Judgment, and the declarations filed in support of the defendants' Motion to Dismiss.

The panel considered and rejected this argument. NLRB Decision at 1 n.3, ECF No. 1-1 (citing *Ctr. for Social Change, Inc.*, 358 NLRB No. 24 (2012)).

The NLRB panel ultimately adopted the hearing officer's recommendation that the Union's challenges to the two contested ballots be overruled and ordered that the ballots be counted. *Id.* at 1 n.2. In considering the remaining objections to the conduct of, and events leading up to, the first election, the NLRB panel determined that two of the Union's objections "considered individually or cumulatively, would warrant setting aside the election" in its entirety. *Id.* at 2. In particular, the NLRB panel found no basis to overrule the hearing officer's crediting of testimony that a supervisor told the plaintiff's employees that a "union would make it easier for him to fire people" and also told at least one employee that "he would have already discharged [the employee] if she were represented by the Union" during the "critical period" prior to the election. *Id.* at 3.

The NLRB panel ordered the contested ballots counted and provided for two potential outcomes. If the revised ballot count resulted in the Union winning the first election, the NLRB's regional director would be "directed to issue a certification of" the Union as the employees' bargaining representative. *See id.* at 4. Alternatively, if the contested ballots showed the Union losing the first election, the regional director was instructed to "set aside the election and order a new election." *Id.* When the contested ballots were counted, the "Union lost the election 40 to 39." Compl. ¶ 16. Consequently, the results of the first election were set aside and a second election was conducted. In this second election, ninety-nine percent of the plaintiff's workforce voted and a strong majority—fifty-five out of seventy-six votes cast—voted for union representation. *See* Cohen Decl. Ex. I at 110, ECF No. 13-1. On November 6, 2012,

the NLRB's regional director "certified the Union as the collective bargaining representative" on behalf of the plaintiff's employees. Compl. ¶¶ 16–17.

The plaintiff filed suit in this Court on March 15, 2013, alleging that, under binding D.C. Circuit precedent, "the recess appointments of Ms. Block and Mr. Griffin to the [NLRB] were unconstitutional" and, therefore, the defendants could not "legally take any action, including but not limited to ordering, conducting, or certifying the results of any representative election" because it lacked a quorum. *See id.* ¶¶ 19–20 (citing *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), *cert. granted NLRB v. Noel Canning*, 133 S. Ct. 2861 (2013)). The plaintiff seeks: (1) a declaration that the NLRB "exceeded its authority when it rendered a decision in the representation proceeding and certified the Union without a valid quorum[;]" (2) a declaration that the NLRB Decision "and the ensuing certification of representative issued on November 6, 2012 [were] void from their inception[;]" (3) an injunction barring the Acting General Counsel from "pursuing unfair labor practice charges against [the plaintiff] based on the void certification of representative including" unfair labor charges based on the refusal to bargain with the Union; and (4) litigation costs and reasonable attorneys' fees. Compl. at 8.

## II.  LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) focuses a federal court on its "affirmative obligation to consider whether the constitutional and statutory authority exist" for it to hear a case. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (internal quotation marks omitted). Article III of the United States Constitution limits the federal judicial power to the resolution of "Cases" and "Controversies," U.S. CONST. art. III, § 2., and thereby sanctions the exercise of jurisdiction only "to redress or prevent actual or imminently threatened injury to persons caused by private or

official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) ("[t]he case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government"). "The Art[icle] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." *Allen*, 468 U.S. at 750. Thus, "standing is a 'threshold jurisdictional question' we must address [] first." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (quoting *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999)); *see also Nat'l Ass'n of Home Builders v. EPA* ("*NAHB*"), 667 F.3d 6, 11 (D.C. Cir. 2011) ("a showing of standing is an essential and unchanging predicate to any exercise of our jurisdiction") (internal quotation marks and citation omitted).

The Supreme Court has explained that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be "fairly traceable to the challenged action of the defendant." *Id.* (internal quotation marks omitted). Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. Moreover, when a plaintiff seeks prospective declaratory or injunctive relief, allegations of past harms are insufficient. *See, e.g.*, *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather, when declaratory or injunctive relief is sought, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

When a purported lack of jurisdiction stems from a lack of standing, the court "must assume that [the plaintiff] states a valid legal claim." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003). The proponent of jurisdiction bears the burden of proving that jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). While "the district court may consider materials outside the pleadings," it must "still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citations and internal quotation marks omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. DISCUSSION

The plaintiff seeks summary judgment based on the D.C. Circuit's opinion in *Noel Canning*. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 1, ECF No. 12. Indeed, the plaintiff appears so confident that it is entitled to the relief sought that it spends a mere six paragraphs, consisting of nine sentences, on its substantive legal argument. *See id.* at 4–5.[3] In doing so, the plaintiff effectively ignores the substantial jurisdictional issues in its suit, devoting one sentence of its complaint—relying upon 28 U.S.C. §§ 1331 and 1337 for subject matter jurisdiction—and no portion of its memorandum in support of its motion for summary judgment to the topic. *See* Compl. ¶ 7; Pl.'s Mem., *generally*.

The defendants seek transfer of this case to the Middle District of Florida or, in the alternative, dismissal of this action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defs.' Mot. at 1.[4] Since no district court has jurisdiction under the

---

[3] Even if this Court had jurisdiction over the instant matter, which it does not, the Court would be inclined to stay its decision until the Supreme Court issues a decision in *NLRB v. Noel Canning*, which was argued in January 2014.

[4] Although ultimately irrelevant to the resolution of the pending motions, the Court notes that all of the election events at issue occurred in the Middle District of Florida; most, if not all of the witnesses likely to be called in this

NLRA to hear the plaintiff's claims, the Court grants the alternative relief sought by the defendants.  In light of this finding, the Court need not address the other arguments in support of and opposition to the plaintiff's motion for summary judgment or the defendants' motion to transfer.[5]  A brief explanation of the statutory scheme under which the instant challenge is raised is helpful to understand the two reasons why the plaintiff's complaint must be dismissed.

### A.      Review Under The NLRA

The NLRA provides for only one method by which actions of the NLRB may be judicially reviewed: through a challenge to a "final order of the Board . . . in any United States court of appeals."  29 U.S.C. § 160(f).  The Supreme Court is clear that the certification of a union, standing alone, is not a "final order of the Board" for the purposes of the NLRA, such that it can be challenged by an employer.  *See Am. Fed'n of Labor v. NLRB* ("*AFL*"), 308 U.S. 401, 411 (1940) (holding that Congress, through the NLRA, "has excluded representation certifications of the Board from . . . review by federal appellate courts . . . except in the circumstances specified in" 29 U.S.C. § 159(d)).  Rather, the NLRA provides for indirect review

---

matter are in the Middle District of Florida; and the effects of this decision are most likely to be felt in the Middle District of Florida.  It is also clear that, under binding Eleventh Circuit precedent, the plaintiff's argument as to the validity of the recess appointments would be rejected in the Middle District of Florida.  *See Evans v. Stephens*, 387 F.3d 1220, 1227 (11th Cir. 2004) (holding President did not exceed constitutional authority in making recess judicial appointment).  Consequently, the defendants argue that the plaintiff filed this suit in this District, where the only connection to the dispute is the mere fact that the NLRB is located here, "at least in part, to avoid the adverse precedent of *Evans v. Stephens* . . . and to reap whatever benefits it thinks might flow from the D.C. Circuit's decision in *Noel Canning*."  Defs.' Mem. at 7.  The Court need not address whether such forum shopping should be countenanced, since the plaintiff lacks standing to bring this action.

[5] The defendants rely upon *Laboratory Corp. of America Holdings v. NLRB*, 942 F. Supp. 2d 1 (D.D.C. 2013), a case with a similar factual background to the instant matter, in support of its argument that a transfer of venue is appropriate here.  *See, e.g.*, Defs.' Mem. at 7.  The court in *Laboratory Corp. of America* did not consider the defendants' subject matter jurisdiction argument, noting that, under *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 431 (2007), "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  *Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 3 (internal quotation marks and citation omitted).  *Sinochem International Co.* also recognized that disposal of a matter on *forum non conveniens* may allow a court to "bypass[] questions of subject matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."  549 U.S. at 432.  In the instant matter, the Court finds no need, in the interests of "convenience, fairness, and judicial economy" to bypass the question of subject matter jurisdiction and, indeed, finds that the interest of judicial economy is met by dismissing this action on the alternative grounds offered by the defendants since *no* district court could hear the claims brought by the plaintiff.

of union certifications.  *See Canadian Am. Oil Co. v. NLRB*, 82 F.3d 469, 471 n.1. (D.C. Cir.

1996) ("Although a Board's decision in a certification proceeding is not directly reviewable in

the courts, an employer may challenge a certification decision indirectly by refusing to bargain

with the union and then raising its election objection in the ensuing unfair labor practice

proceedings."); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964) (describing

identical procedure).

The plaintiff attempts to circumvent this clear proscription against bringing the instant

action in district court by averring that it "does not seek review of the merits of [the] NLRB's

Decision."  Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") at 13, ECF No. 15; *see also* Compl. ¶ 23

("The Board's August 29, 2012 decision and the November 6, 2012 certification are both void

from their inception because the Board lacked a quorum.").  Instead, the plaintiff claims it is

"challeng[ing the] NLRB's composition and statutory authority to act."  Pl.'s Opp'n at 13.[6]

## B.      The Plaintiff Lacks Article III Standing

Neither party addresses what is ultimately a fatal flaw in the plaintiff's case, namely,

whether the plaintiff has standing to sue under Article III.  The Court must address this critical

question, since "[w]hen there is doubt about a party's constitutional standing, the court must

resolve the doubt, *sua sponte* if need be."  *Lee's Summit, Mo. v. Surface Trans. Bd.*, 231 F.3d 39,

41 (D.C. Cir. 2000) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1993)).

The party asserting the claim "carr[ies] the burden of establishing [its] standing."  *Am. Library*

---

[6] The plaintiff's conclusory assertion that this Court has jurisdiction over its claims by virtue of 28 U.S.C. §§ 1331 and 1337 is unavailing.  Both are general federal jurisdiction statutes and "[t]he courts uniformly hold that statutory review in the agency's specially designated forum"—here, the courts of appeal—"prevails over general federal question jurisdiction in the district courts."  *Media Access Project v. FCC*, 883 F.2d 1063, 1067 (D.C. Cir. 1989); *see also Leedom v. Kyne*, 358 U.S. 184, 187 (1958) (noting district court has no jurisdiction over NLRA certification of union under 28 U.S.C. § 1337 in absence of exceptional circumstances).  The plaintiff does not attempt to argue that jurisdiction exists in a district court outside of *Leedom* jurisdiction.  *See* Pl.'s Opp'n at 12–13.  As discussed in Part III.C, *infra*, the plaintiff is incorrect that *Leedom* jurisdiction is available in the instant case.

*Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005). Here, the plaintiff has failed to carry its burden.

As discussed in Part II, *supra*, in order to have standing to sue in federal court, the plaintiff must have suffered "an injury in fact." *See Lujan*, 504 U.S. at 560. Such an injury is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). A plaintiff's generalized grievance that a government agency acted illegally, without linking that illegal action to a concrete and particularized harm to the plaintiff, is insufficient to convey standing on the plaintiff under Article III of the U.S. Constitution. *See id.* at 572–76. Indeed, "[i]t is an established principle . . . that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action." *Id.* at 575 (quoting *Ex parte Lévitt*, 302 U.S. 633, 634 (1937)).

In the instant matter, the plaintiff declares that it "does not seek review of the merits of [the] NLRB's decision," Pl.'s Opp'n at 13, and that "[t]he merits of the Decision are not before this Court," *id.* In doing so, the plaintiff deprives itself of standing. By removing the merits of the NLRB Decision from consideration, the plaintiff's contention boils down to an assertion of standing to pursue its claim because the defendants issued an *ultra vires* order to the plaintiff without a quorum. *See* Compl. ¶¶ 21–23. Merely asserting that the NLRB issued an order without a quorum in violation of federal law is insufficient to confer Article III standing, unless the plaintiff also shows some injury, which the plaintiff has not. *See Lujan*, 504 U.S. at 574–76 (collecting cases); *see also Lévitt*, 302 U.S. at 633.

The only cognizable particularized injury claimed by the plaintiff is referenced in its claim for injunctive relief, where it asserts that it is, by virtue of the NLRB Decision, "being required to violate the law by bargaining with and potentially entering into a contract with a union." Compl. ¶ 26. This is simply untrue. The mere certification of the Union does not require the plaintiff to do anything. As the Supreme Court explained nearly seventy-five years ago, "the certification does not itself command action." *AFL*, 308 U.S. at 408. Indeed, the Supreme Court noted that "§ 9(d) [of the NLRA] provide[s] for certification by the Board of a record of a representation proceeding only in the case when there is a petition for review of an order of the Board restraining an unfair labor practice." *Id.* at 409.

While failure to bargain with the representative of an employer's employees may be an unfair labor practice, the NLRB's certification of an election does not force an employer to engage in bargaining. Rather, an employer is only forced to act under the NLRA when "the Board has ordered the employer to do something predicated upon the results of an election." *Id.* at 411 (quoting 79 Cong. Rec. 7658). In the instant matter, the NLRB has not yet required the plaintiff to bargain with the Union. *See* Compl., *generally*. The NLRB can do so only in the context of an order to remedy an unfair labor practice, such as a failure to bargain. *See AFL*, 308 U.S. at 407. Critically, in order to enter such an order, the NLRB must serve the employer with a "complaint and notice of a hearing by the Board with opportunity to file an answer and be heard." *Id.* at 406. Only after such a hearing is held can the NLRB order the plaintiff to do what the plaintiff complains of: bargain—or potentially sign a contract—with the Union. *Id.* at 409. Such an order has not yet been entered against the plaintiff, thus there is no injury in fact.

A plaintiff may assert the violation of a procedural right as the basis for standing, but only "so long as the procedures in question are designed to protect some concrete interest of his

that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n.8. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496. "[I]n order to show that the interest asserted is more than a mere general interest in the alleged procedural violation common to all members of the public, the plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (citing *Ex Parte Lévitt*, 302 U.S. at 634) (internal quotation marks omitted). In short, by failing to challenge the NLRB Decision, the plaintiff cannot show that it has standing to sue because it has failed to show that the government action complained of caused the plaintiff a "concrete and particularized" injury.[7]

This is the Catch-22 in which the plaintiff finds itself. The Supreme Court has held that if a plaintiff is the object of an illegal government action "there is ordinarily little question that the action or inaction has caused [the plaintiff] injury." The action that allegedly caused the plaintiff injury in the instant case is the NLRB Decision ordering a new election and subsequently certifying the Union. *See* Compl., *generally*. The NLRA and Supreme Court precedent make clear, however, that such actions are not subject to review in district courts. *See* Part III.A, *supra*. To avoid this prohibition on judicial review and bring suit in this Court, the

---

[7] The instant matter resembles that resolved by the D.C. Circuit in *National Association of Home Builders*. In that case, the plaintiffs sought to challenge an EPA determination that a particular river was subject to Clean Water Act jurisdiction, a determination that could, in the future, cause the plaintiffs to need to acquire permits to develop their properties. *See NAHB*, 667 F.3d at 13. The D.C. Circuit found that, in the absence of any specific enforcement action or determination as to a specific property, or a challenge to the merits of the EPA's determination, the plaintiffs lacked standing to challenge the general determination by the EPA. *Id.* at 14. The instant matter is analogous. Here, the mere fact that the Union won the second election has no practical impact on the plaintiff, particularly since the plaintiff is not challenging the merits of the NLRB's decision. *See* Pl.'s Opp'n at 13. Rather, the plaintiff could only be harmed if the NLRB attempts to order the plaintiff to do something predicated upon that election. Just as the property owners in *NAHB* had not yet been harmed by the EPA's determination absent an enforcement action, thus depriving them of standing, the plaintiff in this action has not yet been harmed by the NLRB's election decision, thus depriving it of standing.

plaintiff asserts that it is *not* challenging the NLRB Decision, but, instead, the ability of the

NLRB to act without a quorum. *See* Pl.'s Opp'n at 13 ("[The plaintiff] challenges NLRB's

statutory power to make any decision at all."). In doing so, the plaintiff converts its

particularized grievance—that the NLRB Decision harms the plaintiff—into a generalized

grievance—that the NRLB could not act because it did not have a quorum, regardless of the

substance of the NLRB Decision.

The solution to this conundrum is simple: the plaintiff need only follow the procedure the

plaintiff used in *Noel Canning*, the very precedent the plaintiff asserts applies to the instant

matter. *See* Pl.'s Mem. at 4. In that case, the plaintiff initiated "a routine review of a decision of

the National Labor Relations Board" that the plaintiff had engaged in an unfair labor practice,

"over which [the D.C. Circuit has] jurisdiction under 29 U.S.C. § 160(e) and (f)." *Noel Canning*,

705 F.3d at 493. In challenging the final action of the Board, the plaintiff in *Noel Canning*

"question[ed] the authority of the Board to issue the order [because] the Board lacked authority

to act for want of a quorum, as three members of the five-member Board were never validly

appointed because they took office under putative recess appointments which were made when

the Senate was not in recess." *Id.* at 493. The plaintiff here is attempting to assert the identical

argument but refuses to subject itself to the appropriate procedure, as the plaintiff in *Noel*

*Canning* did. Notably, the predicate to such a challenge has already occurred, as the Union

"filed an unfair labor practice charge against [the plaintiff] alleging that [the plaintiff] violated

Section 8(a)(5) of the NLRA by unlawfully refusing to bargain" with the Union in July 2013.

Defs.' Reply Pl.'s Opp'n Defs.' Mot. ("Defs.' Reply") at 9, ECF No. 18. Assuming the unfair

labor practice proceeding results in a ruling the plaintiff finds unfavorable, the plaintiff may,

under the NLRA, seek review before the D.C. Circuit. *See* 29 U.S.C. § 160(f) ("Any person

aggrieved by a final order of the Board . . . may obtain a review of such order in . . . the United States Court of Appeals for the District of Columbia.").

In attempting to circumvent the procedure outlined in the NLRA for judicial review, the plaintiff has converted what is, in all likelihood, a sufficiently particularized grievance upon which standing could be based before a court of appeals in a challenge to a final NLRB Order, into a generalized grievance on which standing cannot be sustained. As such, this Court lacks subject matter jurisdiction over the plaintiff's claims and the complaint must be dismissed.

### C.     This Court Has No Jurisdiction Under The NLRA

Assuming, *arguendo*, that the plaintiff has pleaded a sufficiently particularized grievance, neither this Court nor any other district court may hear its challenge to the representation decision of the NLRB. As explained in Part III.A, *supra,* Congress has barred, in the NLRA, judicial review of such decisions. The plaintiff attempts to avoid this conclusion by invoking a seldom-used exception to this presumption of non-reviewability. The plaintiff's efforts are unavailing.

The plaintiff implicitly acknowledges that it could not ordinarily bring its claim for relief from the NLRB Decision before a district court but nonetheless asserts that this Court has subject matter jurisdiction under *Leedom v. Kyne*, 358 U.S. 184, 187 (1958). *See* Pl.'s Opp'n at 12. In *Leedom*, the Supreme Court held that, in the rare case when "'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given . . . [and] there is no other means, within [the plaintiff's] control, to protect and enforce that right[,]" a district court may set aside a decision of the NLRB. *Leedom*, 358 U.S. at 190 (quoting *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)).

*Leedom* was that rare case. There, the NLRB refused "to take a vote among the professional employees [in a potential bargaining unit] to determine whether a majority of them would 'vote for inclusion in such unit,' [and] included both professional and nonprofessional employees in the bargaining unit that it found appropriate." *Leedom*, 358 U.S. at 185. That action, the Supreme Court found, was in direct contravention of the NLRA, which stated that "in determining the unit appropriate for collective bargaining purposes, 'the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit.'" *Id.* at 184–85 (quoting 29 U.S.C. § 159(b)(1)). The NLRB "did not contest the trial court's conclusion that the Board, in commingling professional and nonprofessional employees in the unit, had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees. Instead, it contended only that the District Court lacked jurisdiction to entertain the suit." *Id.* at 187. The Supreme Court held that, in such a case, which the Supreme Court characterized as "an attempted exercise of power [by the NLRB] that had been specifically withheld," by Congress, "a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right" of the professional employees that was "assured to them." *Id.* at 189.

The D.C. Circuit has held that "invocation of *Leedom* jurisdiction . . . is extraordinary; to justify such jurisdiction, there must be a specific provision of the Act which, although it is clear and mandatory, was nevertheless violated by the [agency]." *Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002) (quoting *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984)). For employers, such as the plaintiff, the triggering of *Leedom* jurisdiction is even more difficult, since the D.C. Circuit has stated "the

*Leedom v. Kyne* remedy was not devised for the benefit of an employer." *Miami Newspaper Printing Pressman's Union Local 46 v. McCulloch*, 322 F.2d 993, 997 n.7 (D.C. Cir. 1963) (citing *Atlas Life Ins. Co. v. Leedom*, 284 F.2d 231 (D.C. Cir. 1960)).[8]

The D.C. Circuit reasoned that employers were generally outside the scope of *Leedom* because employers' concerns could be "judicially reviewed . . . in a subsequent unfair labor practice proceeding. While this procedure is available to an aggrieved employer (by refusing to bargain with a certified representative) . . . it is practically unavailable to an unsuccessful union," as was the case in *Leedom*. *Id.* Since an unfair labor practice charge is required to initiate the indirect review of NLRB certification decisions, an employer's refusal to bargain with a certified union will typically lead to such review, since a union has a vested interest in filing such a charge. *See id.* The same is not true of a union; a union that refused to bargain with an employer would likely lose the support of its members and, in that circumstance, an employer would be highly unlikely to file an unfair labor practice charge against the union for refusal to bargain. Moreover, in light of the statutory bar to judicial review of representation decisions, the D.C. Circuit observed that "an unsuccessful union in a certification proceeding before the [NLRB] has no adequate remedy by review." *Id.* (quoting *Cox v. McCulloch*, 315 F.2d 48, 50 (D.C. Cir. 1963).

---

[8] The plaintiff challenges this assertion by citing to a forty-eight year old district court case, *Bullard Co. v. NLRB*, 253 F. Supp. 391, 393 (D.D.C. 1966), where the district court found *Leedom* jurisdiction available when an employer sought to force the NLRB to certify a valid election result. Central to the court's finding in *Bullard Co.* was the NLRB's refusal to certify an "admittedly valid election" and the injunction sought only to "compel[] the [NLRB] to perform its statutory duty to certify the results of that election." *Id.* at 394. *Bullard Co.*, therefore, stands only for the proposition that it is theoretically possible for *Leedom* jurisdiction to lie for an employer, in the appropriate circumstances, and could be helpful to the plaintiff's case if the defendants' challenge to the exercise of *Leedom* jurisdiction was based only on the plaintiff's status as an employer. That is not the case, however, as the defendant has challenged, and the plaintiff has failed, the second prong of the *Leedom* analysis, the unavailability of judicial review. *See Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 n.2 (D.C. Cir. 1984) (disagreeing with *Bullard Co.* to extent its holding implied that clear breach of statutory duty was only requirement for *Leedom* jurisdiction, stating "[t]he availability of indirect judicial review always has been considered to be an important consideration in the opinions of the circuit.").

At the same time, due to the statutory constraints on judicial review, including a bar on judicial review of NLRB representation decisions and exclusive authority vested in the courts of appeal to review final orders, the D.C. Circuit has cautioned that the extraordinary nature of *Leedom* relief "cannot be overstated, because . . . *Leedom* jurisdiction is extremely narrow in scope." *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel* ("*Air Traffic Controllers*"), 437 F.3d 1256, 1263 (D.C. Cir. 2006). "[I]n order to justify the exercise of *Leedom* jurisdiction, a plaintiff must show, *first*, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory' and, *second*, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'" *Id.* (emphasis and second alteration in original, citations omitted).

The cases cited by the plaintiff in support of its contention that the instant case constitutes "extraordinary circumstances" warranting the exercise of *Leedom* jurisdiction are unpersuasive. At the outset, two of the cases on which the plaintiff places particular reliance, *Railway Labor Executives' Ass'n v. National Mediation Board* ("*RLEA*"), 29 F.3d 655 (D.C. Cir. 1994) (en banc), *amended by* 38 F.3d 1224 (D.C. Cir. 1994), and *U.S. Airways Inc. v. National Mediation Board*, 177 F.3d 985, 989 (D.C. Cir. 1999), involve interpretation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, not the NLRA. The Supreme Court has noted that the legal underpinnings of the NLRA "cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly with due regard for the many differences between the statutory schemes." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S.

426, 439 (1989).  Thus, on this basis alone, *RLEA* and *U.S. Airways*, *Inc.*, are of limited, if any, usefulness to the Court's analysis.[9]

For instance, instead of the virtual *carte blanche* the NLRB has in certification procedures—by virtue of such certifications not constituting "final orders"— the RLA provision at issue in *RLEA*, 45 U.S.C. § 152 Ninth, strictly circumscribed the pertinent agency's review power.  *RLEA*, 29 F.3d at 662 ("[T]he [National Mediation Board] has no freewheeling authority to act as it sees fit with respect to anything denoted a 'representation dispute.'  The Board's authority is exclusive only with respect to the precise matters delimited by" the RLA.).  Specifically, the RLA provision at issue precluded the National Mediation Board from investigating "representation disputes 'among a carrier's employees' . . . pursuant to a petition from a carrier."  *Id.* at 658.  In contravention of this statutory prohibition, however, the National Mediation Board unilaterally declared that carriers "could initiate representation proceedings in the wake of railroad mergers and acquisitions."  *Id.*[10]  The D.C. Circuit found that because the National Mediation Board sought to expand its jurisdiction beyond the statutory boundaries

---

[9] Indeed, the evaluation of constitutional challenges in the RLA context is wholly different from challenges to the NLRA.  *See U.S. Airways, Inc.*, 177 F.3d at 990.  "Congress' purpose in the RLA [was] to avoid any interruption to commerce or to the operation of any carrier engaged therein," and, as such, the procedures a court must follow, including the evaluation of constitutional challenges, are substantially different and more stringent under the RLA than under the NLRA.  *Id.*  By contrast to the NLRA, where the plaintiff may only assert its claims in district court on a showing that the NLRB deprived the "plaintiff of constitutional rights" in a manner that was "strong and clear," *Nat'l Ass'n of Women's and Children's Apparel Salesmen, Inc. v. NLRB*, 465 F.2d 662, 663 (D.C. Cir. 1972), the D.C. Circuit has held that a much more searching review of the merits of a constitutional claim is required under the RLA.  *See U.S. Airways, Inc.*, 177 F.3d at 990.

[10] In his concurrence in *RLEA*, Judge Randolph characterized this policy change as a new "rule" within the meaning of the Administrative Procedures Act ("APA").  *See* 29 F.3d at 672 (Randolph, J. concurring).  In Judge Randolph's view, the RLA's prohibition of judicial review of the National Mediation Board's fact-finding function was not implicated at all, and, consequently, neither was *Leedom* jurisdiction.  *See id.*  Although the plaintiff argues that *RLEA* supports its argument that *Leedom* jurisdiction is available even when alternative mechanisms for judicial review are also available, based on Judge Randolph's concurrence, *see* Pl.'s Opp'n at 17–18, the plaintiff misconstrues the thrust of the concurrence.  Central to Judge Randolph's finding was that the action taken by the National Mediation Board was not covered by the provision that barred judicial review.  *See RLEA*, 29 F.3d at 672.  Thus, in Judge Randolph's view, there was no jurisdictional bar to overcome in the first instance, and, consequently, no need to resort to *Leedom* jurisdiction.  In the instant matter, the plaintiff makes no argument that, by allegedly acting without a quorum, the NLRB essentially executed a rule change warranting judicial review under the APA, which was the predicate for Judge Randolph's concurrence in *RLEA*.  Indeed, the plaintiff makes no reference whatsoever to the APA.  Judge Randolph's concurrence, consequently, has no bearing on the instant matter.

Congress specified, and the actions taken by the National Mediation Board pursuant to that expansion would otherwise be unreviewable, the district court had jurisdiction under *Leedom*. *See id.* at 662–63.

Unlike the situation in *Leedom*, the NLRA provides a readily available avenue for judicial review of the NLRB Decision in the instant matter, so long as the plaintiff follows the indirect review procedure confirmed over more than seventy years of NLRA jurisprudence. Thus, the *RLEA* court, in finding *Leedom* jurisdiction where there was no other avenue to obtain judicial review, undercuts the plaintiff's position that such jurisdiction is appropriate here where an alternative method of judicial review is readily available.[11]

The plaintiff's reliance on *Dart v. United States*, 848 F.2d 217, 222 (D.C. Cir. 1988), is similarly misplaced since that case is plainly distinguishable on its facts. In *Dart*, the D.C. Circuit found that if an export control statute were construed as precluding any judicial review of the Secretary of Commerce's actions in overturning administrative law judge determinations, it would allow "uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law." *Id.* at 224 (quoting *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)). Central to the Court's holding in *Dart* was the fact that, without judicial review of a supposed "facial" violation of the statute, i.e., where the agency acted in contravention of "plain statutory commands," there would be no control over the government agency at all. *Id.* at 222.

---

[11] The plaintiff is correct that the D.C. Circuit held that the question at issue in *RLEA* was that of the National Mediation "Board's very jurisdiction—a question that is analytically distinct from and *antecedent* to the issue of whether the Board correctly found the 'fact' of representation." *RLEA*, 29 F.3d at 663. Nevertheless, this holding does not help the plaintiff. The plaintiff asserts that the NLRB must have a quorum before it may take "action," and that this quorum requirement is antecedent to the issue of election certification, as was the case in *RLEA*. *See* Pl.'s Opp'n at 14. Even if the plaintiff is correct on this point, the NLRB does not take final "action" by certifying an election; it does so only when it acts on an unfair labor charge. *See AFL*, 308 U.S. at 411. In the instant matter, unlike in *Noel Canning* or *RLEA*, such a final action has yet to take place.

Unlike the action in *Dart*, where the government official did not have the authority to reverse an administrative law judge's decision under the statute, the NLRB has the authority under the NLRA to certify union elections and, furthermore, district courts may not hear challenges to those decisions. Also unlike in *Dart*, where the plaintiff had no opportunity for judicial review, *see Dart*, 848 F.2d at 221, the plaintiff in the instant case has the opportunity for judicial review before an appellate court once it has been "aggrieved by a final order of the Board," 29 U.S.C. § 160(f). *See also Exxon Chems. Am. v. Chao*, 298 F.3d 464, 469 n.4 (5th Cir. 2002) ("Critical to the *Dart* court's decision to review the case under the [*Leedom*] exception was the fact that there was no other opportunity for meaningful judicial review of the agency's decision."). It was the lack of available meaningful judicial review in *Dart* that the court relied upon to exercise jurisdiction, and, in the instant case, such review is readily available, albeit not as immediately as the plaintiff may prefer.

As for the plaintiff's arguments that *Leedom* applies because of the constitutional nature of the alleged violation, the plaintiff's argument is belied by the very cases on which the plaintiff relies for support. In *Lawrence Typographical Union v. McCulloch*, 349 F.2d 704, 708 (D.C. Cir. 1965), the D.C. Circuit found no subject matter jurisdiction in an NLRA case because there had been no "final administrative order" entered by the NLRB, even though the plaintiff union had asserted constitutional claims. *See Lawrence Typographical Union*, 349 F.2d at 708. Similarly, in the instant case, there has been no final administrative order from the Board and, if there were, jurisdiction would appropriately lie in the court of appeals, not the district court.

*McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir 1968), is also unavailing to help the plaintiff. In that case, the D.C. Circuit concluded that the district court did not have subject matter jurisdiction over a case under the NLRA, noting that for a district court

to intervene "the showing that the Board has violated the [NLRA] or deprived a plaintiff of constitutional rights must be strong and clear." *Id.* at 917. The *Libbey-Owens-Ford* court held that direct judicial review of a NLRB decision in district court was available "only under highly exceptional circumstances," and that "[f]or such jurisdiction [in the district court] to exist, the Board must have stepped so plainly beyond the bounds of the [NLRA], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Id.* In *Libbey-Owens-Ford Glass Co.*, the D.C. Circuit held that the aggrieved party "must await an appeal from an unfair labor practice order," *id.* at 917, even though there was a colorable argument that the NLRB had acted beyond the scope of its statutory authorization, but that argument was "novel," *id.* at 918 (Tamm, J. dissenting). *Libbey-Owens-Ford Glass Co.* counsels, in contrast to the plaintiff's interpretation, that even if the NLRB's exercise of authority by a panel including recess appointees is found to be "an erroneous or arbitrary exertion of [the NLRB's] authority" there is no "jurisdiction in the District Court to intervene by injunction" in the absence of an appropriately "strong and clear" showing of a constitutional violation. *Id.* at 917 (quoting *Local 130, Int'l Union of Elec., Radio & Mach. Workers v. McCulloch*, 345 F.2d 90, 95 (D.C. Cir. 1965)). Considering there exists a split among the courts of appeal as to whether recess appointees are, in fact, valid members of the NLRB, *see Noel Canning*, 705 F.3d at 505—and the Supreme Court has yet to rule on the issue—the constitutional violation alleged by the plaintiff is not "strong and clear" within the meaning of *Libbey-Owens-Ford Glass Co.* such that this Court may hear its claim.

Finally, *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 130 S. Ct. 3138, 3150 (2010), another case on which the plaintiff relies for the proposition that objections "collateral to any . . . orders or rules from which review might be sought" are reviewable in

district court, Pl.'s Opp'n at 18, is likewise distinguishable. In *Free Enterprise Fund*, the Supreme Court considered whether a statute conferring jurisdiction on the Securities and Exchange Commission over actions of the Public Company Accounting Oversight Board was "an exclusive route to review" of the Board's decisions, thus precluding district court review. *Free Enterprise Fund*, 130 S. Ct. at 3150. The Supreme Court in *Free Enterprise Fund* was considering a new statute, the Sarbanes-Oxley Act of 2002, and a new agency, the Public Company Accounting Oversight Board, for which the appropriate judicial review procedures had yet to be clarified. *See id.* at 3147. Indeed, the *Free Enterprise Fund* court noted that the question before it was "a new situation not yet encountered by the Court" and that the Sarbanes-Oxley Act provisions "for judicial review of [SEC] action did not prevent the District Court from considering petitioners' claims." *Id.* at 3150. Unlike in *Free Enterprise Fund*, where the Supreme Court found the statute did not intend the courts of appeal to be the "exclusive route" to judicial review, *see id.*, it is well-settled in the instant case that the indirect method of review through defending against unfair labor practice claims is the sole method of review for NLRB certification decisions under the NLRA. *See, e.g.*, *Canadian Am. Oil Co.*, 82 F.3d at 471 n.1. Thus, the plaintiff's reliance on *Free Enterprise Fund* is unavailing.

\* \* \*

In sum, by avoiding any challenge to the merits of the NLRB's certification, the plaintiff has deprived itself of Article III standing. Even if the plaintiff had attacked that certification directly, neither this Court nor any other district court has subject matter jurisdiction over the plaintiff's claims because of the exclusive review provision of the NLRA, which vests jurisdiction in the courts of appeal after a final board action. *Leedom* jurisdiction is unavailable

because of this meaningful opportunity for judicial review.  Consequently, the plaintiff's claims are dismissed.[12]

IV.     **CONCLUSION**

For the aforementioned reasons, the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.  The plaintiff's motion for summary judgment and the defendants' motion to transfer are denied as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date: January 28, 2014

_____
BERYL A. HOWELL
United States District Judge

---

[12] The defendants argue that the plaintiff's Count II, for injunctive relief, has been "abandoned" as a result of the plaintiff ignoring this claim in its Motion for Summary Judgment.  *See* Defs.' Mem. at 21.  The Court disagrees. While Count II is not abandoned, the plaintiff concedes "that Count II would not survive independently from Count I," Pl.'s Opp'n at 21, and since the plaintiff lacks standing for Count II in the same way as for Count I, both claims must be dismissed.